UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SJP INVESTMENT PARTNERS LLC,         } | |
|                                      } | |
|     **Plaintiff,**                   } | |
|                                      } | |
| v.                                   } | Case No.: 2:20-CV-1033-RDP |
|                                      } | |
| THE CINCINNATI INSURANCE             } | |
| COMPANY,                             } | |
|                                      } | |
|     **Defendant.**                   } | |

## **MEMORANDUM OPINION**

This case is before the court on Defendant's Motion to Dismiss. (Doc. # 28). The motion has been fully briefed (Docs. # 28-30) and is ripe for decision. For the reasons discussed below, the Motion is due to be granted in part and denied in part.

**I.     Background**

SJP Investment Partners, LLC is an Alabama company that owns and operates Hotel Indigo Birmingham (Doc. # 27, ¶ 1). Like many other companies, SJP suffered a decline in business due to the COVID-19 pandemic and had to either limit its operation or temporarily close due to the State of Alabama's public health orders. (Doc. # 27, ¶ 17). More specifically, Plaintiff claims that the March 19, 2020 Order, March 27, 2020 Order, and the general effects of COVID-19 prohibited access and functioned to cease on-premise business operations at Hotel Indigo and other businesses in Birmingham. (Doc. # 27, ¶ 16). In fact, COVID-19 was present in the hotel on at least one occasion: in mid-February 2020, a previous guest informed the hotel that she had contracted the virus and subsequently two hotel employees tested positive for the virus. (Doc. # 27, ¶¶ 26-28).

During the relevant period, SJP was affected by the COVID-19 pandemic. It held an insurance policy from Cincinnati Insurance Company (CIC). (Doc #27, ¶¶ 11-12). SJP filed an

insurance claim with CIC for business interruption related to the loss of income that it contends resulted from COVID-19 and the associated state orders. (Doc. # 27, ¶ 18). CIC assigned an adjustor to investigate the claim, issued a Reservation of Rights letter, reviewed the claim, and denied the claim explaining that the policy required physical injury to tangible property, an occurrence it said had not been established. (Doc. #27, ¶¶19-21, 58, 74).

In its complaint, SJP alleges breach of contract against CIC under two provisions of the policy: the Commercial Output Program – Income Endorsement, which encompasses the loss of income and civil authority claim; and the Commercial Output Program – Crisis Event Expense Coverage Endorsement, which includes the communicable disease claim. (Doc # 27, ¶ 84). SJP also pleads a bad faith claim against CIC for "lack[ing] any reasonably legitimate or arguable reason" to deny its claim. (Doc. # 27, ¶ 92).

## II.     Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557.

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he

plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense ... to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all of the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

When a court rules on a 12(b)(6) motion to dismiss, it generally is "limited to reviewing what is within the four corners of the [plaintiff's] complaint." *Brickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006). If a court looks beyond the plaintiff's complaint, usually it "must convert the motion to dismiss into one for summary judgment." *Property Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985). The Eleventh Circuit "recognizes an exception, however, in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284-85 (11th Cir. 2007)

(citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir. 1999); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997)).[1]

## III. Analysis

As explained more fully below, Plaintiff's Second Amended Complaint is a shotgun pleading. The court will provide Plaintiff an opportunity to replead. Having said that, the court concludes after careful review that any claim pertaining to the Loss of Income coverage or Civil Authority coverage would be futile. So, Plaintiff's claims based upon those policy provisions are due to be dismissed. But, Plaintiff shall have the opportunity to replead its claims related to Crisis Event coverage.

### A. Shotgun Pleading

As a general rule, the Eleventh Circuit divides shotgun pleadings into four categories. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). It has explained that a shotgun complaint is one that:

> (1) contain[s] multiple counts where each adopts the allegations of all preceding counts; (2) [is] filled with "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) do[es] not separate each cause of action or claim into separate counts; or (4) assert[s] multiple claims against multiple defendants but do[es] not specify which defendant is responsible for which acts or omissions.

*Brown v. Air Line Pilots Assoc*, 813 Fed. App'x. 353, 355 (11th Cir. 2020) (citing *Weiland*, 792 F.3d at 1321-23 (11th Cir. 2015)). The common characteristic between all four types is the failure

---

[1] The court reaches its current decision after reviewing the face of the Second Amended Complaint, the parties' Memorandum of Law, and the insurance policy. (Docs. # 27-30, 28-1). Because the insurance policy meets the referenced exception—it is mentioned in Plaintiff's Second Amended Complaint, is central to the claim, its contents are not in dispute (except for the proper interpretation of certain terms), and was attached to Defendant's Motion to Dismiss—this court can consider the insurance policy without converting the current motion to dismiss into a motion for summary judgment.

"to give defendants adequate notice of the claims against them and the grounds which each claim rests." *Weiland*, 792 F.3d at 1323.

When a deficient complaint is filed, the court generally will provide the plaintiff with "at least one chance to amend the complaint before [it] dismisses the action with prejudice [as a shotgun pleading]." *Brown*, 813 Fed. App'x. at 355. However, even in such an instance, "a district court need not allow for amendment … where amendment would be futile." *Id.* "An amendment would be futile if 'the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant.'" *Id.*

The court concludes that Plaintiff's Second Amended Complaint is a shotgun pleading of the first and third type described in *Weiland*.[2] *Id.* The complaint contains two counts: breach of contract and bad faith. (Doc. # 27, ¶¶ 80-99). In both Count I – Breach of Contract and Count II – Bad Faith, Plaintiff "re-alleges the foregoing paragraphs as if fully set forth herein." (Doc. # 27, ¶¶ 80, 90). This method of pleading improperly leaves the defendant to guess as to which allegations pertain to which count. Further, Count II not only incorporates *every* previous factual allegation but also the paragraphs defining the cause of action in Count I.

Even more problematic is Plaintiff's failure to divide its separate causes of actions into different counts. In its current form, the Second Amended Complaint contains only two counts; however, Plaintiff appears to assert four different causes of actions: (1) breach of contract for failure to recognize loss of income coverage, (2) breach of contract for failure to recognize civil authority coverage, (3) breach of contract for failure to recognize crisis event coverage, and (4) bad faith. These are matters that must be repleaded. However, as the court explains below, any

---

[2] The current complaint is also a shotgun pleading of the second type described in *Weiland* because it includes "conclusory, vague, and immaterial" facts. However, given that Plaintiff will have an opportunity to replead in compliance with this memorandum opinion, it will have the opportunity to correct that flaw. *Id.* at 355.

amended pleading of the loss of income coverage or civil authority coverage claims would be futile. So, those claims are due to be dismissed. The court will permit repleading of the breach of contract and bad faith claim related to crisis event coverage.

> **B.     The Mere Presence of COVID-19 at a Facility Does Not Amount to "Direct Physical Loss or Damage"**

Under Alabama law, "[a]mbiguity in an insurance contract is to be strictly construed against the drafter." *Mega Life and Health Ins. Co, v. Pieniozek*, 585 F.3d 1399, 1406 (11th Cir. 2009). But, disagreement among adverse parties about the interpretation of a policy provision does not render a contract's language ambiguous. *Gregory v. Western World Ins. Co., Inc.*, 481 So. 2d 878, 881 (Ala. 1985). Indeed, "where questions arise as to the meaning of an undefined … phrase, the court should simply give the … phrase the same meaning that a person of ordinary intelligence would give it." *Mega Life and Health Ins. Co, v. Pieniozek*, 516 F.3d 985, 991 (11th Cir. 2008) (citing *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001)). And when no ambiguity exists, courts must enforce the contract as written rather than rewrite a new policy in favor of a particular party. *See Travelers Property Cas. Co. of America v. Brookwood, LLC*, 283 F. Supp. 3d 1153, 1160 (N.D. Ala. 2017) (interpreting Alabama law).

Here, the disputed phrase is "direct physical loss or damage." The phrase is not ambiguous. "A 'loss' is the diminution of value of something [, and] '[d]irect' and 'physical' … impose the requirement that the damage be actual." *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 Fed. Appx. 868, 879 (11th Cir. 2020) (citing Florida law). To be sure, the Eleventh Circuit interpreted Florida law in the *Mama Jo's* decision. Nevertheless, "Alabamians share the same understanding of the words 'direct' and 'physical.'" *Woolworth LLC v. Cincinnati Ins. Co.*, 2021 WL 1424356 at *5 (N.D. Ala. Apr 15, 2021). Further, a common person would define "loss" as "destruction [or] ruin," "damage" as "loss or harm resulting from injury to person, property, or reputation," and "physical"

as "having material existence." *See Woolworth LLC*, 2021 WL 142356 at *4 (citing Merriam-Webster Online dictionary (2021)).

As a result, an ordinary person--whether from Alabama or Florida--would understand the phrase "direct physical loss or damage" to require a perceptible harm or destruction to property. *Id.* In other words, "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 Fed. Appx. 868, 879 (11th Cir. 2020). When COVID-19 particles are present in a facility, there is no perceptible harm or destruction to property; rather, the consequence is that the premises require cleaning. Thus, any claim for compensation resulting from COVID-19 being present at the facilities under a portion of the policy requiring a "direct physical loss or damage" is due to be dismissed for failure to state a claim on which relief can be granted.

### 1. Plaintiff's Loss of Income Claim Requires Direct Physical Loss or Damage to a Covered Location

The Commercial Output Program – Income Endorsement refers a claimant to the terms of the Commercial Output Program – Property Coverage Part "[w]hen coverage is provided for one or more of the Income Coverage Options." (Doc. # 28-1, 35). Section B of Property Coverage provides that CIC "cover[s] *direct physical loss or damage* to covered property… ." (Doc. # 28-1, 10) (emphasis added). Further, to the extent the language in the Income Endorsement section is relevant, it provides that an interruption "must be caused by *direct physical loss or damage*… ." (Doc. # 28-1, 35) (emphasis added). So, no matter how the court reads Plaintiff's loss of income claim, Plaintiff is required to show "direct physical loss or damage." Yet, the complaint alleges direct physical loss or damage based only on the presence of COVID-19 at the premises. As a result, Plaintiff's claims for relief predicated on Loss of Income coverage are due to be dismissed.

### 2. Plaintiff's Civil Authority Claim Requires Physical Loss or Damage to a Non-Covered Location

The Civil Authority section found at section D of Income Endorsement provides:

> [CIC] extend[s] coverage for earnings and extra expense to include loss while access to 'covered locations' is specifically denied by an order of civil authority. This order must be an [sic] result of loss or damage to property other than at 'covered locations' and caused by a covered peril.

(Doc. # 28-1, 37). Based on this language, Civil Authority coverage involves two prerequisites. First, an order must specifically deny access to a covered location. And second, loss or damage to property other than at a covered location must be the reason for the order.

The court need only address the latter requirement: "loss or damage to property other than at 'covered locations.'" Plaintiff alleges that the rationale behind the Orders was to prevent the spread of COVID-19. (Doc. #27, ¶16). Again, even if COVID-19 was present at other locations (*see* Doc. #27, ¶ 31), that fact is not enough to amount to physical loss or damage to property "other than at [a] covered location[]." COVID-19 particles do not create any perceptible harm or destruction to property; rather, they can be cleaned (whether they exist at covered locations or elsewhere). Thus, Plaintiff's claims for relief based on Civil Authority coverage are due to be dismissed.

### 3. The Commercial Output Program – Crisis Event Expense Coverage Endorsement When Read in the Light Most Favorable to Plaintiff Does Not Require Direct Physical Loss or Damage

Defendant asserts that "direct physical loss to property is an integral part of all the claimed coverages." (Doc. 28, p. 6). Defendant's brief purports to explain how that language applies to Plaintiff's Loss of Income and Civil Authority claims. However, Defendant's assertions miss the mark as they relate to Plaintiff's Crisis Event claim.

The Commercial Output Program – Crisis Event Expense Coverage Endorsement modifies the Property Coverage Part. The different types of coverage within that section are based on the presence of a "covered crisis event," not "direct physical loss or damage." Defendant does not address the Crisis Event coverage any further with the exception of a new and separate argument raised for the first time in its reply brief. (Doc. # 30, pp. 7-8). At this stage, the court cannot say that an amendment to Plaintiff's pleadings related to Crisis Event coverage would be futile.

**IV.     Conclusion**

As discussed above, the court finds Defendant's Motion to Dismiss is due to be granted in part. Additionally, any claim pertaining to the Loss of Income coverage or Civil Authority coverage is due to be dismissed. But, with respect to Plaintiff's claims based on Crisis Event coverage, Defendant's Motion to Dismiss is due to be denied. Plaintiff shall replead its claims for breach of contract and bad faith related to Crisis Event coverage in accordance with Rule 8. A separate order in accordance with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this August 27, 2021.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE