UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SJP INVESTMENT PARTNERS LLC, | } |
| **Plaintiff,** | } } } |
| v. | } Case No.: 2:20-CV-1033-RDP |
| THE CINCINNATI INSURANCE COMPANY, | } } } } |
| **Defendant.** | } |

**MEMORANDUM OPINION**

This case is before the court on Defendant's Motion to Dismiss the Third Amended Complaint. (Doc. # 36). The motion has been fully briefed (Docs. # 36, 37, 39) and is ripe for decision. For the reasons discussed below, the motion is due to be granted.

**I.      Background[1]**

SJP Investment Partners, LLC is an Alabama company that owns and operates Hotel Indigo Birmingham. (Doc. # 33 at 1). SJP held an insurance policy from Cincinnati Insurance Company that included a Commercial Output Program - Crisis Event Expense Coverage Endorsement (CE coverage). (*Id.* at 3; *see* Doc. # 36-1). Plaintiff alleges that "a covered crisis event occurred *each time* all or a part of the Property needed to be closed due to sudden, accidental, and unintentional contamination" as a result "of the 'covered communicable disease' known as Covid-19." (Doc. # 33 at 5). The policy defines covered communicable diseases as follows:

> any disease or any related or resulting diseases, viruses, complexes, symptoms, manifestations, effects, conditions or illnesses, except this endorsement does not apply to any loss directly or indirectly caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease. This Exclusion applies to, but is not limited to, any loss

---

[1] The court recounted additional background concerning this action in its memorandum opinion dated August 27, 2021. (Doc. # 31 at 1-2).

> directly or indirectly attributable to Anthrax, Avian Influenza, Crimean-Congo Hemorrhagic Fever, Dengue Hemorrhagic Fever, Ebola Hemorrhagic Fever, Francisella Tularensis, Influenza, Lassa Fever, Marburg Hemorrhagic Fever, Meningococcal disease, Plague, Rift Valley Fever, Severe Acute Respiratory Syndrome, Smallpox, Tularemia, Yellow Fever or any pandemic or similar influenza which is defined by the United States Center for Disease Control as virulent human influenza that may cause global outbreak, or pandemic, or serious illness.

(Doc. # 36-1 at 8). To be sure, the policy repeats this list -- including the two catchall phrases -- as an exclusion to CE coverage. (*Id.* at 5).

## II.     Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557.

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense ... to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all of the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

When a court rules on a 12(b)(6) motion to dismiss, it generally is "limited to reviewing what is within the four corners of the [plaintiff's] complaint." *Brickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006). If a court looks beyond the plaintiff's complaint, usually it "must convert the motion to dismiss into one for summary judgment." *Property Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985). The Eleventh Circuit "recognizes an exception, however, in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284-85 (11th Cir. 2007) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir. 1999); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997)).[2]

---

[2] The court reaches its current decision after reviewing the face of the Third Amended Complaint, the parties' Memoranda of Law, and the insurance policy. (Docs. # 33, 36, 37, 39). Because the insurance policy meets the referenced exception—it is referenced in Plaintiff's Third Amended Complaint, is central to the claim, its contents are not in dispute (except for the proper interpretation of certain of its terms), and it was attached to Defendant's Motion to Dismiss—this court may consider the insurance policy without converting the current motion to dismiss into a motion for summary judgment.

**III.    Analysis**

The court previously dismissed Plaintiff's Second Amended Complaint but allowed Plaintiff to replead the portions that related to Crisis Event coverage. (Doc. # 32). In its previous opinion, the court noted that the Second Amended Complaint was a shotgun pleading as defined by the Eleventh Circuit in *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015). (Doc. # 31 at 4-6). The court explained that it would be futile for Plaintiff to replead its claims pertaining to the Loss of Income coverage or Civil Authority coverage. (*Id.* at 6-8). However, at the time of the Second Amended Complaint, "the court [could] not say that an amendment to Plaintiff's pleadings related to Crisis Event coverage would be futile." (*Id.* at 9). After careful review, the court now concludes -- after review of the amended pleading and the additional briefing on the Crisis Event coverage -- that Defendant's Motion to Dismiss (Doc. # 36) is due to be granted.

In its Third Amended Complaint, Plaintiff alleges breach of contract and bad faith relating to CE coverage. (Doc. # 33 at 23-28). Defendant argues that the court should dismiss the complaint for several reasons, but the court need only address one: the policy language makes clear that pandemics are excluded from the policy's definition of covered communicable diseases. (Doc. # 36 at 10-12).

"Whether a provision of an insurance policy is ambiguous is a question of law." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). "[T]he fact that adverse parties contend for different constructions [of an insurance policy] does not mean that the disputed language is ambiguous." *Gregory v. Western World Ins. Co., Inc.*, 481 So. 2d 878, 881 (Ala. 1985). "While ambiguities or uncertainties in an insurance policy should be resolved against the insurer, ambiguities are not to be inserted by strained or twisted reasoning." *Twin City Fire Ins. Co. v. Alfa*

*Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001). "Where the parties disagree on whether the language in an insurance contract is ambiguous, a court should construe language according to the meaning that a person of ordinary intelligence would reasonably give it." *Id.* And, "[w]here there is no ambiguity in the terms of an insurance contract, the language must be enforced as written, and courts cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties." *St. Paul Fire & Marine Ins. Co. v. Britt*, 203 So. 3d 804, 814 (Ala. 2016) (quoting *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 806 (Ala. 2002)).

Plaintiff contends that the portion of the covered communicable disease definition reading "any pandemic or similar influenza which is defined by the United States Center for Disease Control as virulent human influenza that may cause global outbreak, or pandemic, or serious illness" is one catchall phrase that is directed only at influenza pandemics, or at least that the policy is ambiguous. The court disagrees. Rather, the court concludes that the ordinary person would read the provision as two catchall phrases and that the provision is not ambiguous.

The contested provision is preceded by a listing of sixteen diseases, several of which have caused epidemics and pandemics. But any ordinary person would not expect the policy drafter to list every disease that has or could cause a pandemic. Nor would an ordinary person expect the policy to list every strain (or strain subtype) of influenza that has or could cause a global outbreak, pandemic, or serious illness. The policy's use of the word "or" excludes these separate concerns through two distinct catchall phrases: (1) "any pandemic" and (2) "similar influenza which is defined by the United States Center for Disease Control as virulent human influenza that may cause global outbreak, or pandemic, or serious illness."

The purpose of the "any pandemic" language is to ensure that any non-listed pandemic (*e.g.*, Covid-19) is also excluded from CE coverage. Additionally, the purpose of the "similar

5

influenza which is defined by the United States Center for Disease Control as virulent human influenza that may cause global outbreak, or pandemic, or serious illness" phrase is to exclude from CE coverage a non-listed influenza (*e.g.*, H1N1) that the Center for Disease Control has stated (1) may cause a global outbreak, (2) may cause a pandemic, or (3) may cause serious illness.

Here, neither party disputes that Covid-19 is a pandemic. Because Covid-19 plainly falls under the catchall "any pandemic," Plaintiff's alleged losses directly or indirectly caused by Covid-19 are excluded from CE coverage. And, to be sure, Plaintiff's complaint only alleges losses caused by Covid-19. Therefore, the facts alleged by Plaintiff cannot give rise to a cause of action that alleges breach of the CE coverage or a cause of action that alleges bad faith for denying CE coverage.

**IV.     Conclusion**

Any loss directly or indirectly caused by the Covid-19 pandemic is excluded from the policy's CE coverage. And Plaintiff only alleges loss that was caused by Covid-19. As a result, Plaintiff fails to state a claim upon which this court can grant relief. Accordingly, Defendant's motion is due to be granted.

A separate order in accordance with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this December 14, 2021.

*[signature]*
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

7